Anna Benvenuti-Hoffman v. Plaintiffs Some cases present difficult questions under Heck v. Humphrey. This is not one of them. When performing the analysis under Heck v. Humphrey whether a Section 1983 claim is barred, there is a threshold question. The threshold question is, is there any outstanding conviction, meaning a conviction that still has legal effect, a conviction that has not been set aside, a conviction that has not been eliminated? That is a binary question. Either there is a conviction in legal effect or there is not. And if the answer is no, if there are no convictions still in legal effect, that is the end of the analysis. So Heck itself asked us to look at whether there was a favorable termination, and that was reinforced by McDonoghue. And if we look at malicious prosecution cases, which Heck is based on, those cases say that a vaifakatur of a case based on assentment is not a favorable termination. So what do we do about that? So there are, this is a complex area of the law and it requires analytical precision, and there are three kind of related areas, which are slightly different, involved in the question you just posed. So the first is the Heck analysis, which, although it analogized to malicious prosecution, lays out what it means by a type of favorable termination, and it lays it out clearly if there is a conviction in effect or if there isn't. And that is reiterated in the Wallace decision. It's reiterated in the Bradford decision from this court. It's also reiterated in the McDonough decision that you just mentioned from the Supreme Court this term, which says in the McDonough case, because there was no conviction, Heck, although it was similar, there was a corollary rule, Heck did not directly apply. Then Heck lays out four different ways that there could be a favorable termination. One of them, for example, is expungement. So I suppose the same argument could be made there, that once a conviction is expunged, it doesn't exist. But that's not the basis that Heck decided. Heck decided that those were four different favorable terminations, and this focatura pursuant to a settlement agreement doesn't fall into any of those four categories. Well, first, it does actually fall into one of the categories, because there's a decision by a state tribunal authorized to make the determination that the conviction is no longer valid. And valid simply means has legal effect. There's no dispute that the convictions in this case no longer have legal effect. Is it significant that the state superior court judge basically made a comment that all he was doing was engaging in a ministerial act when he vacated? And then secondly, can you explain the impact of the stipulation in the settlement agreement between the parties that the proof adduced at the first trial was sufficient to establish guilt beyond a reasonable doubt? So to answer the first question about the comment about his role being simply ministerial, no, I don't believe that's significant, because there's no question under state law what the court did was vacate the conviction. So what the defendants are asking you to do is to look behind the validity of the state court judgment. The state court judgment is entering a vacator, and you don't do that under the HEC analysis. A vacator without prejudice, which is another concern that I have. In other words, I suppose I could liken it to the dismissal of the charge pre-trial with leave to permit the prosecutor to refile in the future based on some change in the evidence. So there are two separate issues. There's the conviction, which is the vacator is determined. That's what HEC deals with. And again, that's what the court says in Wallace. It's what it says in Bradford, that the HEC only deals with when the conviction is in effect. Then there's a separate issue, which you're raising, about continuing legal charges. And that's what this court has already dealt with in Bradford, what it dealt with in Rosales-Martinez, other cases talking about what kind of resolution do you need of the continuing legal charges. And that's the issue that's dealt with. Although it's similar, it's not identical to the HEC issue. That's what's dealt with under the Wallace v. Cato line of cases about how you determine accrual of a Section 1983 claim. Rosales, as I read it, sent the whole mess back to the district court to figure it out. Rosales said, well, we just got at the last minute these papers showing that it was vacated pursuant to a settlement. We don't really know what it means. So you, district court, go and figure it out. Respectfully, that was not the result in Rosales. And the Bradford court actually specifically deals with what happened in Rosales. And what it says is there were two separate questions. And both Rosales and Taylor are more complicated issues than here, but they both control. So in Rosales, there were four convictions that were vacated. And then there was a subsequent conviction based on a guilty plea to one of those charges. And what this court said in Rosales was, although the initial convictions had been vacated, that lifted the HEC bar. And it specifically said that's when the claims accrued. Well, it said that it wasn't barred by the statute of limitations, but didn't say that it was invalid. So it was fairly ambiguous in Rosales. I didn't see any reasoned decision about whether the vacatur pura settlement actually was a favorable termination for HEC purposes. But in Bradford, this court specifically harmonizes the decision in Jackson v. Barnes, the decision in Rosales. And then, again, this is the same thing that this court just reached in Taylor v. County of Pima, which is when you have a vacatur entered via valid state court process, when it's entered based on a stipulation by the parties that the grounds for state relief are met, even if the stipulation comes out of a global settlement, and in both Taylor and Rosales, that global settlement led to additional charges, which is different from this case. In this case, all criminal charges are dismissed and all convictions are vacated. Taylor had one sentence about the vacatur, the charge that was vacated, but doesn't have any reasoning. And was that necessary to its determination? Because it based everything on the second conviction.  Why is that? Because if the defendants here were right, and if the vacatur pursuant to a settlement agreement was not sufficient in validation under HEC, Taylor's suit would have been completely barred. Instead, what the court held was that his suit was not barred by HEC by the original convictions, but he was limited in the damages that he could pursue because of the second conviction, which was entered. And that's the issue that there were competing views on. The first issue is so straightforward, I agree, it did get very little discussion, because under the binding case law, that is, and again, you know, we had 12 professors, including three authors of the leading federal court's textbooks, write in an amicus brief on this case, saying that the decision below is such an egregious misapplication of the HEC doctrine that they're urging you to correct it. And I can go back to the question about McDonough, because it is a separate issue, but it has also been dealt with already by binding decisions by this court in Bradford. So often it is the case that a conviction, when it is vacated and indictments are dismissed, whether you're looking at it under the HEC rule, which applies only to convictions and comes out of the line of cases, the Prizer line of cases about sorting prisoner suits into either Section 1983 or habeas, comes out of the concerns for avoiding parallel litigation in state court and federal court, and comes out of the concern for avoiding conflicting judgments. So that applies only when there's a conviction in effect, and the HEC bar is lifted as soon as a conviction is vacated. And that's what HEC says. It says if there are no outstanding convictions, then the plaintiff should be allowed to pursue the claims. It's what Wallace says. It's what Bradford says. Then there's a separate issue, which is the accrual date of a Section 1983 claim. And that was laid out, the framework for that was laid out in Wallace v. Cato in 2007, and then this court took it up in Bradford, and then the Supreme Court just took it up in the McDonough v. Smith. And under that framework, you look at the type of claim brought. Now, we have several different claims in this case. We have claims for fabrication of evidence. We have claims for Brady violation, coerced confessions, which are all separate claims recognized in the circuit. They have separate elements. They're all laid out by lots of case law cited in our briefs. In order to determine the accrual rule for those claims, you again analogize to malicious prosecution, but you don't just engraft the exact same requirement for favorable termination that there is at the common law. You use it as a guide, but you don't do it exactly. So, for example, in Jackson v. Barnes, the plaintiff was permitted to pursue a Section 1983 claim, even though after his conviction was vacated, and Barr was lifted under heck, he was subsequently reconvicted of the exact same crime, but in a conviction that was free from the taint of the unlawfully used evidence. Was that implying the invalidity of his prior conviction? It wasn't implying the invalidity of his prior conviction because what happened was, the first he was convicted based on evidence including a statement that was taken in violation of Miranda. That conviction was reversed. On that basis, the State was barred from using that tainted evidence in a retrial, so he was convicted again in a clean conviction. Are the claims of your client implying the invalidity of the conviction? We don't dispute that the claims imply the invalidity. The question is whether there are any. Now, to answer the question that Judge Tallman asked earlier about what does the stipulation mean, again, you have to look at this under the governing law. So under the governing law, a stipulation is only going to bar a subsequent claim if there's judicial estoppel. Otherwise, at most, it would be an evidentiary admission. Judicial estoppel, the opposing counsel raises that issue, and obviously the superior court relied on the stipulation, expressly relied on it, in vacating the conviction pursuant to the settlement. And made no independent factual finding to support the vacator order, which troubles me as well, because that is required under the Alaska statute, is it not? I don't, I mean, I would disagree that the, it made no, I mean, it's signed the order. I don't think that there, I don't know of any specific additional finding beyond. Order with the concurrent statement that all I'm doing here is engaging in a ministerial act, which doesn't sound anything like I'm making an independent factual determination that the defendants were actually innocent of the crime. There's no requirement that they make a finding that they're actually innocent. There's a requirement that you follow the state procedures. The court didn't make a finding that there were enough facts for a new trial. That was in the stipulation. The court said the AG, the state AG is empowered to settle a civil action, and now that the AG has determined to settle the civil action, the only authority I have is to ministerially sign it. That's what the court said. At most, I would say that that's a dispute of fact, which would have, which is not, you can't. What is a dispute of fact? Whether the court was actually fulfilling its duty, which you would normally assume it was, under Alaska state law. I mean, you might say as a matter of law, the court was doing something other than what it said it was doing. But it was pretty clear about what it was doing. It stated exactly what it thought it was doing. There's no question as to what was said, as to what was actually done, is a dispute of fact. And generally, especially on a motion to dismiss, you can take judicial notice. When you say what is done is disputed, if we're talking about a historical fact, what was disputed about the historical fact? The court stated what it stated. It signed what it signed. We have the documents, so explain to me what historical fact is being disputed. It was presented with a stipulation. It had heard five weeks of evidence supporting the basis for the stipulation. What you're saying is you're going to, is suggesting is you could presume that the court acted outside its authority based on one comment made on the record. One, I'm performing a ministerial act, and secondly, there's a provision that says that the parties stipulate that the original conviction was based upon proof beyond a reasonable doubt. So the stipulation, again, that would only be based on judicial estoppel. For judicial estoppel, and by the way, judicial estoppel is a new argument that the defendants raised. It was never even presented to the district court below. I'm following up on Judge Acuda's question. What's disputed here? Are you going to call Judge Lyle as a witness to be deposed in the civil rights action, if we permit you to go forward, to ask him what did you mean by these comments on the record when you entered the vacator order? What fact needs to be resolved? I think the, I don't think that the heck analysis permits you to look behind the valid state court order. What this is actually asking for is to say that there was something wrong with the procedure used, which is not the way that the Alaska state courts view it. But the procedure under Alaska law required the factual finding that Judge Lyle did not make. I would disagree with that. He entered an order based on a stipulation that was presented to him, which is a proper procedure under the law. It wasn't a finding based on my analysis of five weeks of evidence that I heard at the evidentiary hearing. He told the parties at the time it was going to take him several months before he could render such a finding. So his statements essentially were made in conjunction with the entry of the vacator order that the parties presented to him as part of the stipulation. So courts all the time rely on stipulations of fact reached by counsel. That doesn't make their subsequent orders not have force. If you have that provision stipulating that there was proof beyond a reasonable doubt, I'd totally be with you. But I don't know what to do with that. I don't even know what it's doing in there. Is it trying to protect the city and its officers from civil rights liability by saying, look, based on what the jury heard the first time around, we all agree there was enough evidence to convict these men of these crimes. But your response to that is, yes, but the evidence was so tainted by all these constitutional violations that you mentioned earlier that that is not the proof that should have been presented to the jury if they'd received a fair trial. Isn't that your response? I don't think you can separate the stipulation from the rest of the release-dismissal agreement. Then what's it doing in there? Explain to me what water was that stipulation carrying? I think there's no question that that was something that the prosecution wanted as part of an attempt to insulate them from a civil rights suit. But it has been conceded that under the governing law, under Roomery, under Lynch v. City of Alhambra, at this stage of the proceedings, you cannot find that the release-dismissal agreement is enforceable. So the stipulation is... That goes to the contract issue, does it not? You don't have a finding by our federal district court judge as to whether or not that stipulation was knowingly and voluntarily entered, do we? No, nothing's been reached at all. And, in fact, again, this issue wasn't even raised. The judicial estoppel issue was not even raised below. And the facts, which you must take as true, are that none of this was voluntarily entered. It was coercive. I want to reserve a little bit of time for rebuttal. But you want us to set that agreement aside now, do you not, on the basis that it was not freely and voluntarily entered, particularly by Mr. Roberts, who had already been released from confinement? It's been conceded at this stage that the defendants had a burden to meet to prove the enforceability, and they have not even attempted to meet it. Should we remand to the district court for an evidentiary hearing on that issue? Is that necessary before we can declare the agreement null and void? I think it's not ripe at this stage for a determination, which is what the defendants conceded. Because it doesn't have a factual record. We don't know one way or the other. There's a specific burden on the defendants that they have to prove that enforcement would be consistent with the public interest and that it was voluntarily entered. But the district court didn't give them an opportunity to do that. They never asked for one. They didn't even attempt to meet enforceability and meet their burden at this stage. Well, I'm not sure it's exactly the same question. I was going to ask the same question. Good morning. May it please the court, I'm Matt Singer for the City of Fairbanks. Seated with me at council table is Joe Evans, who represents the individual police officers. He's reserved five minutes and will address why the state of Alaska is an indispensable party, one of our alternative arguments. I'll watch the clock. It is Hornbook tort law that there is no favorable termination when a conviction is set aside based on a settlement. This court recognized that principle in McCoubry v. Benninga. Heck v. Humphrey adopted the common law when it adopted the favorable termination rule. In fact, the court said that the rule should apply in a 1983 case, quote, just as it has always applied to actions for malicious prosecution. Let me ask you a question. It doesn't seem to me that Heck bars 1983 claims when there's no outstanding criminal judgment, does it? Heck bars 1983 claims unless one of the four resolutions identified by the Supreme Court exists. That is? I understand what you're saying, but the bottom line is, when I'm looking at the 1983 claim, it seems to me that the 1983 claim wouldn't go forward unless there has been some outstanding criminal judgment which would allow Heck to be involved. That respectfully is contrary to malicious prosecution law. It's recognized by this circuit and by essentially every other court in America. I don't know how to address that. I look at what Heck does, and it seems to me that if there is no outstanding criminal judgment, if you will, then I don't know what bar Heck would have. Heck was decided in the context, Mr. Heck was in prison when he brought his 1983 case, so the court wasn't asked to decide. In fact, I don't think the appellants have identified a case anywhere in America that involves the circumstances before your honors today where somebody has obtained a settlement without any evidence of innocence or any showing of constitutional infirmity in the original conviction and then turned around and filed a 1983 claim and said that the mere setting aside of the convictions was sufficient to establish a favorable termination. How do you get around our decision in Taylor v. County of Pima? The district court here did not have benefit of this decision because it wasn't decided until 2019 after the court had entered the dismissal of the Civil Rights Act. I'm referring specifically to page 935 of 913F3 where our Taylor panel wrote, here Taylor's 1972 jury conviction has been vacated by the state court, so Heck poses no bar to a challenge to that conviction or the resulting sentence. Well, under the circumstances of that case, favorable termination wasn't disputed. It was vacated pursuant to a constitutional infirmity. So it was vacated in a manner that indicated that the original conviction was invalid. The original conviction had been declared invalid in the words of Heck. So it wasn't merely vacated pursuant to a settlement. And each of the cases that the plaintiffs rely on are accrual cases, statute of limitations cases in which the original conviction is expressly set aside either due to an agreement of the parties that there were cumulative errors or constitutional errors or an express finding of the court that there were constitutional errors, a Brady, Miranda violation, some significant error or new DNA evidence becomes available. The court sets aside the first conviction. And then in the accrual context, the analysis of those cases is when has the action by the prosecution terminated such that the statute of limitations begins to run.  The first is the substantive element of the tort. That is, is there a favorable termination? And that question relies on tort law, on state law. What is a favorable termination? And a favorable termination is not a settlement under American law. The second question is the vacation. Is it not? Vacating the vacator of the judgment of conviction. If the Supreme Court had intended the mere vacator of a judgment to satisfy the favorable termination rule, first it would not have said that it wanted the law of malicious prosecution to apply in just the same way to 1983. And then it wouldn't have listed the four specific methods by which a case can be resolved favorably. It would have simply said so long as there's no extant conviction. End of story. But instead the court identified the four ways in which, and here the only manner in which a conviction can be set aside to establish a favorable termination rule is if a court has declared it invalid. Not if it's merely set aside, but if it's declared invalid. Well, to declare is to expressly state something. To expressly, explicitly state that the prior judgment was invalid. That never happened. Judge Lyle never declared that the prior judgment was invalid. Quite the contrary. And I think it's worth taking a minute to look at what Judge Lyle did. The excerpt of that hearing is at excerpt 287. And Judge Tolman said in his questioning that there were two comments. He mentioned the comment that the judge was merely ministerially signing the settlement. And then Your Honor mentioned the stipulation. But, in fact, that hearing is rife with comments. There's five or six comments. The judge explains in detail the inherent authority of the Attorney General to handle the business of the State of Alaska to enter into compromises. The judge said that when the Attorney General properly exercised that authority, that the court, the superior court, had no authority to review or to criticize. The judge explained that the criminal rule under which the stipulation was being entered did not authorize the court either to approve of the stipulation or to disapprove of the stipulation. So the judge repeatedly, throughout the course of that short hearing, made clear he wasn't making any findings. He wasn't reaching any conclusions. He was signing the dotted line to effect a negotiated compromise entered into between able attorneys representing both sides. The notion, some of the amicus parties have suggested that merely by signing the vacator, the judge was granting post-conviction relief. Post-conviction relief in Alaska is defined by statute. It's Alaska Statute 1272.020. For Judge Lyle to have granted post-conviction relief, he would have had to make factual findings that there was clear and convincing evidence of actual innocence. That's the standard under the statute for a trial court judge to set aside a conviction. He didn't make those findings, clearly did not make those findings. In fact, the stipulation provides the opposite, that the convictions were validly and properly entered based on proof beyond a reasonable doubt. I'm a little worried about the, if you will, reliance on this stipulation because the stipulation was made as a part of a release-dismissal agreement, and I'm a little worried that if I'm going to do judicial estoppel as it relates to that stipulation, that it was the State's burden to suggest that there's somehow some judicial estoppel, and I don't think the State ever met that burden. Well, the State hasn't participated in this action. It wasn't sued. If we're really talking about the judicial estoppel burden who had it, it seems to me that one has to, the defendants in this particular matter, have to come forward with some proof that this, if you will, stipulation is a reason to give judicial estoppel. Well, the court, I think what I'm hearing Your Honor say is that you're concerned about whether the rumoury doctrine, the notion that a release-dismissal agreement may not always be enforceable, should somehow extend to a stipulation. Courts that have considered that question have uniformly rejected the notion that stipulations of facts signed by attorneys can be subject to rumoury. That is, the attorneys here were not coerced. The attorneys were not, no attorney was sitting in prison. These gentlemen were officially represented by seven different lawyers at the PCR hearing. They had a combined almost 150 years of experience. One of the attorneys, Mr. Bundy, had been the U.S. attorney for the District of Alaska. For purposes of judicial estoppel, I was interested in your argument. So the stipulation was presented to the court, and it seems from the transcript that the court relied on the stipulation in vacating the conviction. Now I believe what needs to be shown for judicial estoppel is to say the parties are now arguing the opposite. Is that right? Or what would you need to show for judicial estoppel? We have to show that the plaintiffs are arguing the opposite of what they stipulated. And I believe they are. They've stipulated that the original convictions were validly and properly entered and based on proof beyond a reasonable doubt. And then as counsel conceded this morning, all of their counts challenged the validity of the same convictions. So in order to secure their immediate release, the four plaintiffs asserted before Judge Lyle in the stipulation that the convictions were valid and proper. Then two years later they turned around and sued in this court to say, no, the same convictions were not valid. They were improper. So they're taking the opposite position. There's no question that Judge Lyle relied on the stipulation. The stipulation is the reason that the convictions were vacated. That piece of the judicial estoppel analysis is certainly satisfied. Maybe we should turn to the State as a signature, an indispensable party. Has the State ever claimed any interest in this action? Mr. Evans is going to address why the State is an indispensable party. And I can cede the remainder of my time to him to make that argument. Well, I understood you wanted to make that argument. Mr. Evans was planning to address that. So I will let him, unless there are any other questions, I will let him address that next. Apparently not. Thank you. Thank you. Your Honors, my name is Joe Evans. I represent the four individual police officers in this matter. I will focus my argument on why the State of Alaska is an indispensable party in this matter. Although this issue was not considered by the district court, it is an alternative ground for dismissal in the event this court does not affirm the district court's heck basis for dismissal. Why is the State indispensable? We can enter relief as a federal court granting damages for a civil rights violation against the city and the individual officers without joining the State of Alaska, which has 11th Amendment immunity from such an action. So why is it indispensable to a civil rights? Your Honor, it's indispensable because I would submit that the settlement agreement, if it is enforceable and it is valid, would not allow this court to do that because that settlement agreement specifically states that their convictions were based upon proof beyond a reasonable doubt and that their convictions were valid. But why can't the district court conduct appropriate discovery and perhaps on summary judgment make a factual determination as to whether the settlement agreement was knowingly and voluntarily entered, relying perhaps upon testimony from the State's lawyers who were involved in negotiating it for some of the facts that would inform that decision? The State doesn't have to be a party to solicit evidence from the State, does it? But, Your Honor, if the State and the city had engaged together in negotiations for this settlement agreement, I believe you're correct. This settlement agreement, though, if you look at the settlement agreements when they were signed, specifically Excerpt of Record 114 to 117, 125 to 128, 136 to 139, and 147 to 150, what jumps out at you is that this agreement was signed by the appellants and the State of Alaska on December the 9th. The hearing regarding this settlement agreement was on December the 17th. The City of Fairbanks signed on December the 18th. The City was not involved at all in putting this agreement together. So I would respectfully submit, Judge Shillman, in response to your question, that it's more than just a question of evidence. It's more than just a question of asking the State what they did. The State is the one that negotiated this agreement. The State is the one that put it together. I'm not disputing in my questioning that the State isn't an important source of evidence here on the enforceability of the contract, but the plaintiffs are not seeking damages from the State of Alaska. So other than having perhaps a sovereign interest in the enforceability of its settlement agreement, why does the State have to be a party to the civil rights case? That's where you're losing me. Your Honor, I believe that the State needs to be a party to this because as part of the State's putting together agreements such as this, it's part of their obligation in administering the criminal justice in the State of Alaska for them to have the ability to negotiate agreements such as this and have those agreements enforced or have them not decimated, which is what the appellants seek to do here. They seek to hold that this agreement is unenforceable, et cetera. But that's purely a factual dispute, isn't it, that would ultimately inform the district court's decision as to whether the contract should be enforced? But from the State's standpoint, Your Honor, if this agreement is unraveled and is not enforceable, it impedes and impairs their ability, the State's ability, not the City's ability, because the State prosecutes felonies, as the Court knows. It impedes the State's ability to enter into such settlement agreements in handling criminal cases. I'd like to know what happens if the settlement agreement turned out to be unenforceable. To what extent is everything unwound? Now, presumably the State could retry the defendants because they agreed in the settlement agreement that they didn't bar themselves from doing that. But is the conviction reinstated? Or what would happen if the settlement agreement is unenforceable? If this is unenforceable, then, in my opinion, it would need to go back to the State court. And at that particular point, the State court and the State of Alaska would need to determine whether or not they wish to proceed with prosecutions. But they have that right now, do they not, under the terms of the settlement agreement? They retained, because it was a vacate or without prejudice, they retained the authority to refile charges against these four men if additional evidence came to their attention to warrant a retrial. And I assume that never happened in the years that have passed. But, Your Honor, it would seem to me that's all the more reason, pardon me. I was going to say since 2015, nothing new has come forward to trigger. But wouldn't that be unenforceable also? In other words, if the contract is unwound, there is nothing binding on the State. I'm just wondering if the convictions would come back because they were vacated pursuant to the settlement and the stipulation, or whether the State would then be free to retry the four defendants. I think, Your Honor, when you look at the posture it would be in, you're back to where they were right after the post-conviction relief. I mean, nothing had been decided before the settlement about the validity or non-validity of those convictions. And to me, that's another reason that you need to have the State of Alaska in this matter because the State of Alaska needs to be here to protect their interest in their administration of the criminal justice system here in Alaska. Why have they not asserted any interest? I don't know if you know that, but that seems to weigh against saying that they're dispensable. Your Honor, actually, I looked and I could not find a case in this circuit or any of the other circuits where a sovereign was required to appear in federal court to assert their sovereign immunity. And if appellants had found a case... No question, it's not immunity. You identified a sovereign interest in, I guess, the freedom of the State to make prosecution decisions. But nobody's trying to get money out of the State, so they don't have to worry about being immunized from damages. Are you seeking some sort of a declaratory judgment from the court in this case that the State is free to do what the State is always free to do, which is to file felony charges whenever they have probable cause to believe that a defendant or that a man has violated the law? No, Your Honor. What I'm saying is that the State is required to appear in this matter, which they cannot do in federal court, to defend the agreement that they negotiated. Well, they could petition to intervene. I mean, the District Court has the discretion to allow them in as a party, even at this late stage. And they haven't done that. And I don't think you answered Judge Acuda's question as to have they ever expressed any interest in... Not formally, Your Honor. Well, then why are we worried about the State of Alaska, if they don't care enough to even ask to participate in these proceedings? Well, if the City's merely a third-party beneficiary to a contract that the State negotiated, it would seem to me, if you want to abrogate... You're a third-party beneficiary if you're a signatory to the agreement, and you were, were you not? I beg your pardon? You were a signatory to the settlement agreement. Yes, we were. You're not a third party. You are a party to the settlement agreement. Your Honor, I believe my time is up. Yes, we were a signatory to the agreement. You have some time for rebuttal. Just a couple responses to things that my opponent stated. The first is we have definitely cited cases directly on point dealing with settlement... convictions that were vacated pursuant to settlement agreements. They're on all fours. That is Rosales-Martinez, that is... Not on all fours. That was a deferred accrual in a very strange case as well, where the person came in and said, my conviction, I got relief under habeas, habeas relief, and then subsequently determined that, oh, no, it was, there was some settlement agreement, and the court didn't really pass on that. But, well, it did, actually. The part that was relevant, because it related all the information that had come from judicial notice, was that there was a pending motion for post-conviction relief. During that, while that motion was pending, which is just like what happened in this case, there was a settlement reached. Our facts are better than those facts, because as part of that settlement, there was actually a guilty plea to one of the four accounts. So the settlement was reached, there was a stipulation presented to the state court that said that there was sufficient basis to grant post-conviction relief. That was presented, the state court signed it, and this court held that lifted the heck bar based on those initial convictions. And as the federal court scholar's amicus points out, it is not possible to undo a state court judgment just by settlement agreement. You have to follow the procedures provided by state court. And it is also not true that under Alaska law, the only way to undo a conviction is through compelling evidence of innocence. Actually, we cite in our brief a portion of the post-conviction statute which allows a conviction to be vacated when there is sufficient new evidence of material facts that a new trial could be ordered, which means that there's new evidence that on a new trial would probably produce an acquittal. That's what the statute provides. That's what the stipulation was between the parties, that that factual element was met. And then the court relied on that in order to sign the vacater. You're over your time. I think we have your argument. The case of Marvin Roberts v. City of Fairbanks is submitted.
judges: Tallman, Ikuta, N.R. Smith